IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-286-FL

| | |
|---|---|
| TERRANCE A. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's-31 & 33). Plaintiff has responded to Defendant's motion (DE-35), and the time for filing any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-31) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-33) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for Disability Insurance Benefits ("DIB") on June 9, 2008 alleging that he became unable to work on October 1, 2001. (Tr. 15). He later amended his disability onset date to June 16, 2007. *Id.* This application was denied initially and upon reconsideration. *Id.* A

1

hearing was held before an Administrative Law Judge ("ALJ"), who determined that Plaintiff was not disabled during the relevant time period in a decision dated February 18, 2010. *Id.* at 15-24. The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review on March 24, 2011, rendering the ALJ's determination as Defendant's final decision. *Id.* at 5-8. Plaintiff filed the instant action on June 8, 2011. (DE-5).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
>
> 42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by

substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 17). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) degenerative arthritis of the right ankle status post triple fusion surgery; 2) sleep apnea; 3) osteoarthritis; and 4) dysthymic disorder. *Id.* However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id* at 18. Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work. *Id.* at 20.

3

Specifically, the ALJ found that:

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he has the ability to make simple, work-related decisions. Sedentary work involves lifting and/or carrying objects weighing up to 10 pounds at a time with occasional lifting or carrying of articles like docket files, ledgers, and small tools. Sedentary work also involves sitting (with normal breaks) for about 6 hours of an eight hour workday, and walking and standing for about 2 hours out of an eight-hour work day.

*Id.* at 20.

The ALJ then determined that Plaintiff was able to perform his past relevant work as a transportation/logistics manager. *Id.* at 22. In the alternative, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 23. Accordingly, the ALJ determined that Plaintiff was not under a disability through the date of his decision. *Id.* at 24.

The undersigned has reviewed the entire record and finds that these determinations were supported by substantial evidence. Moreover, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for his resolutions of conflicts in the evidence. Plaintiff's argument relies primarily on the contention that the ALJ improperly weighed the evidence. Indeed, Plaintiff's fourth assignment of error argues that the "ALJ erred by failing to consider Plaintiff's PTSD a severe impairment . . ."(DE-32, pg. 18). Plaintiff supports this argument by summarizing the medical record and then essentially asking this Court to re-weigh the evidence contained therein.

However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting

evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, his claims are without merit.

Nonetheless, the undersigned shall now address Plaintiff's remaining assignments of error.

**The ALJ properly assessed Plaintiff's credibility**

Plaintiff first argues that the ALJ improperly assessed his credibility. (DE-32). During the hearing in this matter, Plaintiff testified that he sought treatment for his psychiatric issues in 2007 or 2008. (Tr. 32). He indicated that he was diagnosed with PTSD primarily because he was having nightmares about his first sergeant being killed in Iraq. *Id.* at 33. Plaintiff testified that he is unable to work because he does not like to be around other people. *Id.* at 35. Specifically, he experiences anxiety attacks which render him unable to function. *Id.* at 35-36. He also testified that he has "stayed in bed all day" due to depression. *Id.* at 43. Because Plaintiff has undergone several ankle surgeries, he requires a cane to ambulate. *Id.* at 38-39. Plaintiff also testified that he has chronic arthritis in his back. *Id.* at 39.

The ALJ made the following findings with regard to Plaintiff's credibility:

> While the claimant did not allege any mental limitations in his initial disability application, he now states that he has disabling post-traumatic stress disorder (PTSD) in which he experiences nightmares, panic attacks, and flashbacks 2-3 times per week. He states that this condition is a result of being extremely disturbed when his first sergeant was killed in 2003 and one of his fellow soldiers was killed some years later in the Iraq war. He testified to crying spells, anger and agitation which cause him to avoid being around crowds. However, two Veteran Administration medical screenings for PTSD conducted in September of 2007 and July of 2008 were negative for PTSD and depression. During both of these screenings, the claimant reported that within the past month he had experienced absolutely no symptoms of nightmares, avoidance or detachment behaviors. He had not been on guard, watchful or easily startled because of his past experiences. He stated that he had not felt numb or detached from others, activities or his surroundings. He also reported no problems with having

5

little interest or pleasure in doing things or feeling down, depressed or hopeless (Exhibits 3F and 6F).

However, only one month after the July 2008 screening, the claimant underwent a private psychological examination and reported that he had begun having nightmares in 2006 at least three times per week including waking in a sweaty panic that lasted thirty minutes to one hour. He now reported having flashbacks 3-4 times per week, panic attacks twice per week and rarely socializing with family and friends. He reported that he was depressed 100% of the time with no energy and little interest in things. Psychiatrist Edwin Hoeper diagnosed the claimant with chronic PTSD and dysthymic disorder and assigned him a Global Assessment Functioning (GAF) score of 35, which is indicative of an individual who has some impairment in reality testing or communication or major impairment in several areas such as work or school, family relation, judgment, thinking or mood. Based on this evaluation, Dr. Hoeper opined that the claimant is moderately compromised in his ability to sustain social relationships and is unable to sustain work relationships. He stated that the claimant was permanently and totally disabled and unemployable. He prescribed the claimant Traxadone and Klonopin (Exhibit 8F).

Following another psychological examination in July of 2009 by psychiatrist Stanley Oakley, the claimant made similar claims of nightmares, depressed mood, panic attacks, memory loss, poor concentration and disturbances in motivation and mood. Dr. Oakley diagnosed the claimant with chronic PTSD and dysthymic disorder and assigned the claimant a GAF score of 50 which is indicative of someone with borderline moderate/serious impairment in social, occupational or school functioning (Exhibit 9F).

The undersigned gives minimal weight to the opinions of psychiatrists Hoeper and Oakley as they were non-treating psychiatrists whose opinions are without substantial support from the other evidence of record. These doctors apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, there exist good reasons for questioning the reliability of the claimant's subjective complaints. For example, while the claimant alleges mental disability due to the psychological trauma he initially suffered in 2003, he did not seek mental health treatment until 2008, while he was in the process of applying for social security disability benefits. In addition, just one month prior to first seeking mental health treatment, the claimant completely denied having any of the nightmares, depression and other symptoms he vividly described to Drs. Hoeper and Oakley. Finally, the undersigned notes that the claimant exhibited excellent recall of remote details, dates and events

> during the hearing. In addition, during an interview with a social security field officer, the claimant had no problems with understanding, coherency, concentrating, talking or answering (Exhibit 4E) . . .
>
> . . . In sum, the description of the degree of mental symptoms and limitations which the claimant has provided throughout the record for alleged PTSD has generally been inconsistent and unpersuasive . . .
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment . . .
>
> The claimant has had several physical examinations since his alleged onset date which confirm post surgical foot changes and pain, some limited range of motion, and knee crepitus and stiffness. However, records also reveal that the claimant has continued to exhibit good muscle tone, strength and sensation in all extremities. There is also evidence that the claimant's use of a CPAP machine has been helpful with his sleep apnea . . .
>
> This evidence of the claimant's strength, along with evidence of the claimant's activities of daily living including some level of cooking, cleaning and mowing, lend little support to the claimant's assertion that he is unable to perform any substantial gainful activity. While the claimant alleges debilitating medication side effects that make him chronically tired, medical records indicate generally that those side effects were mild or were never reported to the claimant's treating physicians to the extent alleged and would not interfere with the claimant's ability to perform work activities in any significant manner.
>
> *Id*. at 18-22.

These findings were supported by substantial evidence. For example, in September, 2007 and July, 2008, Plaintiff: 1) was screened for PTSD and the findings were negative; 2) denied having nightmares in the last month; and 3) denied feeling down, depressed or hopeless. *Id.* at 461, 488. When asked to describe the illnesses, injuries or conditions that limit his ability to work on June 9, 2008, Plaintiff did not list PTSD or any of its symptoms. *Id.* at 150. On June 21, 2008, Plaintiff reported that he had no depression or anxiety *Id.* at 466. During this

examination, Plaintiff does not list PTSD among his chief complaints. *Id*. at 465. However, on September 22, 2008, Plaintiff told Dr. Edwin Hoeper that "he began having nightmares in 2006 . . . [and] currently has nightmares at least three times per week." *Id.* at 504. Likewise, Plaintiff informed Dr. Stanley Oakley that "his mood has never been the same" since an incident in 2002 or 2003. *Id.* at 506.

On January 2, 2009, Plaintiff: 1) was sleeping better; 2) could not recall his dream content; and 3) felt more relaxed after starting medication. *Id*. at 527. During this examination, Plaintiff's: 1) behavior was appropriate and cooperative; 2) affect was appropriate; and 3) thought content was normal. *Id*. at 530-531. Finally, Plaintiff demonstrated no evidence that he was experiencing hallucinations. *Id*. at 531.

In addition: 1) Plaintiff's use of a CPAP machine had been helpful with his sleep apnea (Tr. 21, 217, 486, 539); 2) Plaintiff's chronic pain was partially relieved with Tramadol and Relafen (Tr. 21, 450, 486, 539); and 3) Plaintiff's hypertension was controlled (Tr. 21, 452, 458, 539). On June 21, 2008, Plaintiff had full motor strength in his upper and lower extremities. *Id*. at 468. It was noted that Plaintiff could wash dishes, cook, and clean laundry. *Id*. at 466. He was also capable of riding a lawn mower. *Id.* After Plaintiff's June 21, 2008 examination, Dr. Natalie Doyle determined that Plaintiff could: 1) stand and walk two hours in an eight hour workday; 2) sit six hours in an eight hour workday; and 3) frequently or occasionally lift 20 pounds. *Id.* at 468-469. Dr. Doyle noted that Plaintiff required a cane to walk "any type of distance." *Id.* at 468. She also noted that Plaintiff could not bend, stoop, or crouch without an assistive device. *Id.* at 469 Finally, Dr. Doyle opined that Plaintiff could not perform frequent manipulative movements. *Id.*

In short, the ALJ properly pointed out that the medical record contained substantial

8

evidence that was inconsistent with Plaintiff's subjective complaints.

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Furthermore, the regulations provide a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms. 20 C.F.R. § 404.1529; Craig , 76 F.3d at 593-596. First, the ALJ must determine whether there is objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. § 404.1529(b); Craig, 76 F.3d at 594. Second, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the capacity for work. 20 C.F.R. 404.1529(c); Craig, 76 F.3d at 595. The ALJ evaluates the intensity and persistence of the symptoms and the extent to which they limit a claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c). At the second step, however, claims of disabling symptoms may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of the symptoms. *See* Craig, 76 F.3d at 595. Since symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, all other information about symptoms, including statements of the claimant, must be carefully considered in the second part of the evaluation. 20 C.F.R. 404.1529(c)(2). The extent to which a claimant's statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p, 1996 WL 374186, *4.

Here, the ALJ followed these standards in assessing Plaintiff's credibility. The ALJ's findings of fact demonstrate that the ALJ gave proper weight to all of Plaintiff's limitations and

9

impairments in assessing Plaintiff's credibility. Likewise, the ALJ's citations to Plaintiff's medical records constitute substantial evidence which support that assessment. Accordingly, this assignment of error is without merit.

**The ALJ properly assessed the opinion of Dr. Hoeper**

Plaintiff argues that "[t]he ALJ did not give the opinion of Plaintiff's treating physician[, Dr. Hoeper,] controlling weight even though there was no substantial evidence to contradict it." (DE-32, pg. 15). Dr. Hoeper examined Plaintiff on September 22, 2008. (Tr. 503-504). Plaintiff reported that he began having nightmares in 2006, and at the time of examination had nightmares at least three times per week, flashbacks three to four times per week, and panic attacks two times per week. *Id*. at 503-504. Plaintiff stated that he felt depressed 100% of the time with no energy and little interest in things. *Id*. Plaintiff also reported crying spells and that he became angry and agitated easily. *Id*. Dr. Hoeper diagnosed Plaintiff with PTSD and dysthymic disorder. *Id*. at 503. He opined that Plaintiff was moderately compromised in his ability to sustain social relationships and was unable to sustain work relationships. *Id*. at 504. Therefore, he considered Plaintiff permanently and totally disabled and unemployable. *Id*.

With regard to Dr. Hoeper's opinion, the ALJ made the following findings:

> . . . Psychiatrist Edwin Hoeper diagnosed the claimant with chronic PTSD and dysthymic disorder and assigned him a Global Assessment Functioning (GAF) score of 35, which is indicative of an individual who has some impairment in reality testing or communication or major impairment in several areas such as work or school, family relation, judgment, thinking or mood. Based on this evaluation, Dr. Hoeper opined that the claimant is moderately compromised in his ability to sustain social relationships and is unable to sustain work relationships. He stated that the claimant was permanently and totally disabled and unemployable. He prescribed the claimant Traxadone and Klonopin (Exhibit 8F) . . .
>
> The undersigned gives minimal weight to the opinions of psychiatrists Hoeper and Oakley as they were non-treating psychiatrists whose opinions

10

are without substantial support from the other evidence of record. These doctors apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, there exist good reasons for questioning the reliability of the claimant's subjective complaints. For example, while the claimant alleges mental disability due to the psychological trauma he initially suffered in 2003, he did not seek mental health treatment until 2008, while he was in the process of applying for social security disability benefits. In addition, just one month prior to first seeking mental health treatment, the claimant completely denied having any of the nightmares, depression and other symptoms he vividly described to Drs. Hoeper and Oakley. Finally, the undersigned notes that the claimant exhibited excellent recall of remote details, dates and events during the hearing. In addition, during an interview with a social security field officer, the claimant had no problems with understanding, coherency, concentrating, talking or answering (Exhibit 4E).

Moreover, opinions on some issues, such as statements that a claimant is "disabled", "unable to work", can or cannot perform a past job are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the regulations and legal standards set forth therein 20 CFR 1527(e)(l) and (2),20 CFR 416.927(e)(l) and (2). While records also indicate that the Department of Veterans Affairs has assigned the claimant a disability rating for PTSD and other impairments, the final responsibility for deciding social security disability is reserved to the Commissioner, who is the ultimate arbiter of the issue of disability. Under 20 CFR 404. 1527(e)(3) and 20 CFR 416(e)(3), the Social Security Administration will not give any special significance to the source of an opinion on issues reserved to the Commissioner. In sum, the description of the degree of mental symptoms and limitations which the claimant has provided throughout the record for alleged PTSD has generally been inconsistent and unpersuasive.

*Id*. at 19.

It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Wireman v. Barnhart, 2006 WL 2565245, * 8 (W.D.Va. September 5, 2006)(internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he

11

Case 5:11-cv-00286-FL   Document 38   Filed 04/04/12   Page 11 of 15

sufficiently explains his rationale and if the record supports his findings." *Id*. (citations omitted). While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 166 F.3d 1209, * 2 (4th Cir. 1999) (unpublished opinion)(citations omitted).

Contrary to Plaintiff's argument, there was substantial evidence in the record to support the ALJ's findings. In his decision, the ALJ fully explained his reasoning in weighing the medical evidence. Most significantly, Plaintiff previously had two negative medical screenings for PTSD, where he denied having any symptoms, including nightmares. *Id.* at 461, 488. Likewise, during a June 21, 2008 examination Plaintiff was not depressed or anxious. *Id*. at 466. He did not complain of, nor was he diagnosed with, PTSD. *Id*. at 465-469. This evidence contrasts sharply with the report of Dr. Hoeper. *Id*. at 504.

In short, the weight given to Dr. Hoeper's opinion by the ALJ was supported by substantial evidence. Accordingly, this assignment of error is without merit.

12

**III.   The ALJ properly weighed the decision of the Department of Veterans Affairs ("VA")**

The VA has determined that Plaintiff is disabled.  *Id*. at 129-133, 195-200, 202-207. Plaintiff asserts that the ALJ "cast[s] off the [VA] decision . . . [w]ithout explanation as to why he disagreed with the determination."  (DE-32, pg. 17).   Social Security Ruling 06-03p states:

> Our regulations at 20 CFR 404.1527(e) and 416.927(e) make clear that the final responsibility for deciding certain issues, such as whether you are disabled, is reserved to the Commissioner (see also SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner"). However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 CFR 404.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.

SSR 06-03p.

Thus, while decisions by other governmental and nongovernmental agencies are not binding upon the Defendant, an ALJ should nonetheless "explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases." SSR 6-03p. *See also,* Watson v. Astrue, 2009 WL 2423967 (E.D.N.C. August 6, 2009)(ordering remand when ALJ failed to analyze prior NCDHHS decision).   "Decisions by other agencies as to the disability status of a Social Security applicant are considered so probative that the ALJ is required to examine them in determining an applicant's eligibility for benefits."  Alexander v. Astrue, 2010 WL 4668312 (E.D.N.C. November 5, 2010).

Contrary to Plaintiff's assertion, the ALJ did exactly that.  With regard to the VA's determination, the ALJ stated:

> While records also indicate that the Department of Veterans Affairs has assigned the claimant a disability rating for PTSD and other impairments,

13

> the final responsibility for deciding social security disability is reserved to the Commissioner, who is the ultimate arbiter of the issue of disability. Under 20 CFR 404. 1527(e)(3) and 20 CFR 416(e)(3), the Social Security Administration will not give any special significance to the source of an opinion on issues reserved to the Commissioner. In sum, the description of the degree of mental symptoms and limitations which the claimant has provided throughout the record for alleged PTSD has generally been inconsistent and unpersuasive.

(Tr. 19).

This finding was preceded by the ALJ explaining, in detail, why: 1) he did not find Plaintiff's testimony fully credible; and 2) he did not give controlling weight to the opinion of Dr. Hoeper. *Id*. at 18-19. As previously noted, both of those findings were supported by substantial evidence. Therefore, the ALJ fully explained the consideration he gave to the VA's determination, and this assignment of error is without merit. *See*, Barnett v. Astrue, 2012 WL 75046 (January 10, 2012 S.D.W.Va.)("When comparing the standards for establishing disability promulgated by the SSA to the less exacting standards employed by the VA, the ALJ's decision to give 'little weight' to the VA's determination is entirely reasonable.").

**Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-31) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-33) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Wednesday, April 04, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE