IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-286-FL

| | |
|---|---|
| TERRANCE A. WILLIAMS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | ORDER |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DE # 31, 33). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate William A. Webb entered memorandum and recommendation ("M&R") wherein he recommends that the court deny plaintiff's motion, grant defendant's motion, and uphold the final decision of the Commissioner of Social Security ("Commissioner"). Plaintiff timely filed objection to the M&R to which defendant briefly responded. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge.

## BACKGROUND

Plaintiff filed an application for disability insurance benefits ("DIB") on June 9, 2008, alleging a disability onset date of October 1, 2001. Plaintiff later amended his disability onset date to June 16, 2007. His claim was initially denied and upon reconsideration. Hearing was held before an Administrative Law Judge ("ALJ") on February 18, 2010. The ALJ issued decision denying

plaintiff's request for benefits. On March 24, 2011, the Appeals Council ("AC") denied plaintiff's request for review. Plaintiff filed complaint in this court for review of the final administrative decision.

### DISCUSSION

A.    Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1)(C). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court

may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff was not engaged in gainful employment. At step two, the ALJ found that plaintiff suffered from various impairments, including degenerative arthritis of the right ankle status post triple fusion surgery, sleep apnea, osteoarthritis, and dysthymic disorder. However, at step three, the ALJ further determined that these impairments were not severe enough to meet or medically equal one of the impairments in the regulations.

Prior to proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work. The ALJ then determined that plaintiff could perform his past relevant work as a transportation/logistics manager. Alternatively, the ALJ determined that there were jobs existing in significant numbers in the national economy that plaintiff could perform. The ALJ determined that plaintiff was not under a disability at any time through the date of his decision.

3

B.  Analysis

Plaintiff's objections are organized as a single objection, however, plaintiff lodges four separate objections to the M&R, addressed separately below. All of plaintiff's objections relate to the ALJ's assessment of the issue of plaintiff's alleged post traumatic stress disorder ("PTSD").

1.  ALJ's Assessment of Credibility

Plaintiff objects to the magistrate judge's review of the ALJ's assessment of plaintiff's credibility. Plaintiff suggests that the M&R does not reveal any meaningful review by the magistrate judge and that the ALJ "play[ed] doctor" by finding that plaintiff's condition was inconsistent with PTSD. Specifically, plaintiff argues that the ALJ must provide "valid specific" reasons for rejecting a claimant's credibility, otherwise the ALJ must accept plaintiff's testimony as true.

Under well-settled law, an ALJ employs a two-step process in evaluating the intensity, persistence, and limiting effects of symptoms on a claimant's ability to perform basic work. See Craig, 76 F.3d at 594; SSR 96-7p, 1996 WL 374186 at *2 (July 2, 1996). "First, the ALJ must determine whether medically determinable mental or physical impairments can produce the symptoms alleged. Second, the ALJ must evaluate the claimant's testimony about his subjective experiences." Fisher v. Barnhart, 181 F. App'x 359, 363 (4th Cir. 2006) (per curiam) (citing Craig, 76 F.3d at 591-96). The ALJ must consider the entire record in making this determination. 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186 at *4.

Here, the ALJ engaged in the required two-step inquiry. With regard to the second step, the ALJ engaged in a careful inquiry of plaintiff's description of his PTSD symptoms and the effect they have on his ability to work. See Tr. 9-20. The extent of the ALJ's inquiry is evidenced in the administrative opinion as well as in the transcript from the administrative hearing in which the ALJ

4

repeatedly and distinctly questioned plaintiff regarding his descriptions of PTSD. See, e.g., Tr. 28, 32, 43, 51-52. With regard to the transcript of the administrative hearing, the court notes that the ALJ seemed to place particular emphasis on determining the extent of plaintiff's subjective complaints regarding the PTSD and the effect it has on plaintiff's daily life and ability to work.

Plaintiff argues that the ALJ did not provide valid, specific reasons for rejecting plaintiff's credibility, and instead impermissibly played doctor. After careful review of the record, the court does not agree. With regard to the ALJ's proffered reasons for giving little weight to plaintiff's credibility, the court finds that the analysis in the administrative opinion offers several specific reasons for discounting plaintiff's credibility.

> Yet, there exist good reasons for questioning the reliability of the claimant's subjective complaints. For example, while the claimant alleges mental disability due to the psychological trauma he initially suffered in 2003, he did not seek mental health treatment until 2008, while he was in the process of applying for social security disability benefits. In addition, just one month prior to first seeking mental health treatment, the claimant completely denied having any of the nightmares, depression and other symptoms he vividly described to Drs. Hoeper and Oakley. Finally, the undersigned notes that the claimant exhibited excellent recall of remote details, dates and events during the hearing.

Tr. 19. To the extent the magistrate judge quoted this same material, the court finds that this is not simply regurgitating the ALJ's opinions, but rather is specific evidence of the careful review the ALJ undertook with regard to plaintiff's credibility. The crux of plaintiff's objection with regard to the ALJ's credibility assessment is that plaintiff does not agree with the ALJ's overall weighing of the evidence in the record and the conclusion reached. As noted by the magistrate judge, it is not this court's province to second guess the ALJ's well-supported determination. See Mickles v. Shalala, 29 F.3d 918, 929 (4th Cir. 1994). Additionally, "[g]reat weight should be given to the

5

Case 5:11-cv-00286-FL   Document 41   Filed 08/07/12   Page 5 of 12

hearing examiner's findings where credibility of witnesses is involved." Laws, 368 F.2d at 644.[1] Accordingly, plaintiff's objection is overruled.

2. Evaluation of Plaintiff's Treating Physician

Plaintiff objects to the ALJ's consideration of the opinion of plaintiff's treating physician, Dr. Hoeper. Plaintiff suggests that the magistrate judge did not entertain plaintiff's argument that Dr. Hoeper's opinion is supported by the substantial evidence of record and should be given controlling weight.

The Fourth Circuit has held that a treating physician's opinion in entitled to controlling weight *only* if it is supported by clinical and laboratory diagnostic techniques, *and* if it is not inconsistent with other evidence. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Garrett v. Astrue, 2012 WL 174655 at *3 (D.S.C. 2012); Ward v. Chater, 924 F.Supp. 53, 55 (W.D.Va. 1996).

To determine if Dr. Hoeper's opinion is inconsistent with the record, the court has engaged in an extensive review of the same. Upon review, the court finds that ALJ's findings to be consistent with the evidence of record. To begin, the chief medical issues addressed from approximately 2007 to the time of the administrative hearing were plaintiff's difficulty with his feet and ankles post surgery as well as problems with sleep apnea. As the ALJ and magistrate judge noted, it was not until September 26, 2008, that any psychiatric or mental issue was mentioned. However, that is not to say that prior to that date no psychiatric or mental assessment was performed. Several were, over the years, and they were consistently negative.

---

[1] The ALJ found plaintiff's statements regarding the alleged PTSD not to be credible. In addition to deferring to the ALJ's well supported credibility determination, the court notes another inconsistency in plaintiff's testimony. On December 1, 2009, plaintiff indicates that he watches news of Iraq once in awhile to see where friends are and how things are going. Tr. 527. However, on January 14, 2010, when the ALJ asked how seeing things on TV about combat in Iraq affected him, plaintiff responded that he could not look at it and would change the channel if something like that was on. Tr. 52.

6

As early as April 2002, plaintiff was described to have good cognition, no physical or emotional barriers. Tr. 381. In August of 2002, similarly no cognitive issues or emotional barriers. Tr. 238. In September of 2003, plaintiff had no depression, no excessive worry, no attempted suicide. Tr. 410. In December 2003, plaintiff experience no depression, no problems sleeping, no hopelessness, and did not experience little interest in things. Tr. 305. In January 2006, plaintiff denied problems with emotional or psychiatric issues. Tr. 285. In June 2006, the mental health report was the same, and plaintiff felt normal stress. Tr. 280. In December 2006, plaintiff reported a normal stress level. Tr. 226. In February 2007, plaintiff appeared alert and healthy. Tr. 250. In March 2007, plaintiff experienced no depression, and had a normal mental status. Tr. 245, 246, 370. That same month, plaintiff denied problems with emotional or psychiatric issues. Tr. 268.

Of note, in June 2008, plaintiff experienced no nightmares, no efforts to block things from his mind, and no feelings of numbness or detachment. Tr. 463. He was not on guard, not watchful, and not easily startled. Id. His PTSD screening was negative. Tr. 463. Later in June 2008, the record reflects he could occasionally wash dishes, cook, do laundry, and ride his lawn mower. Tr. 466. That same consult reflected that plaintiff was negative for depression or anxiety, but that he did experience frustration. Id. In August 2008, plaintiff's chief complaints were HTN (hypertension), scoliosis, arthralgias of multiple joints, obstructive sleep apnea with use of CPAP, several surgical corrections of severe pes planus, especially the right foot and ankle. Tr. 484. In August 2008, a psychiatric evaluation found plaintiff to be alert and oriented with a pleasant mood and affect. Tr. 485. Plaintiff's depression screening was negative. Tr. 488.

The first mention of PTSD appears to occur one month later, on September 26, 2008, when plaintiff told Dr. Hoeper that he has nightmares at least three times per week, panic and sweats,

7

flashbacks three to four times a week, panic attacks two times a week, and averaged only three hours of sleep a night. Dr. Hoeper recorded that plaintiff is hyper vigilant, cannot tolerate people behind him, rarely socializes, has a mildly impaired memory, a working memory that is 100% impaired, and experiences anger, sadness, and fear 50% of the time. Tr. 502. Dr. Hoeper found plaintiff to be permanently and totally disabled and unemployable. Id.

In August of 2009, nearly a year later, Dr. Oakley describes plaintiff as having difficulty with concentration and memory. Dr. Oakley also records plaintiff having difficulties with memories of his first sergeant being killed in 2002 or 2003. Tr. 506. Plaintiff has chronic insomnia, nightmares almost every other night, no friends, and feels detached. Id. In December 2009, plaintiff continued to have sleep problems. Tr. 512. At that time, PTSD and depressive disorder were included in plaintiff's problem list. Tr. 524.

The court has engaged in this detailed review of the record to illustrate that Dr. Hoeper's opinion is inconsistent with the majority of the record. The majority of the record does not include even the slightest mention of problems with PTSD or depressive disorder. In fact, up until the abrupt change in September 2008, plaintiff consistently reported negatively when medically evaluated for any mental problems, or even when evaluated specifically for PTSD. Looking at the record as a whole, the court cannot conclude that the ALJ did not correctly evaluate Dr. Hoeper's opinion compared to the evidence of record. The ALJ not only considered the documentary evidence, but also considered plaintiff's testimony at hearing, which has already been discussed. The court cannot reweigh evidence and second-guess the ALJ in this way. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d at 589 FULL). Accordingly, plaintiff's objection is overruled.

8

Case 5:11-cv-00286-FL   Document 41   Filed 08/07/12   Page 8 of 12

3.  Consideration of Favorable VA Decision

Plaintiff's third objection is that the ALJ did not properly consider plaintiff's favorable decision from the Veteran's Administration ("VA"). In the administrative opinion, the ALJ noted the following:

> While records also indicate that the Department of Veterans Affairs has assigned the claimant a disability rating for PTSD and other impairments, the final responsibility for deciding social security disability is reserved to the Commissioner, who is the ultimate arbiter of the issue of disability. Under 20 C.F.R. 404.1527(e)(3) and 20 CFR 416(e)(3), the Social Security Administration will not give any special significance to the source of an opinion on issues reserved to the Commissioner. In sum, the description of the degree of mental symptoms and limitations which the claimant has provided throughout the record for alleged PTSD has generally been inconsistent and unpersuasive. However, giving the claimant the benefit of the doubt and recognizing that the claimant has received some psychotropic medications, the undersigned has found that the claimant has symptoms of dysthymic disorder which render him able to only make simple work related decisions.

Tr. 20.

Plaintiff cites Deloatche v. Heckler, 715 F.2d 148 (4th Cir. 1983) for the proposition that the ALJ must be able to articulate "persuasive, specific, valid reasons" for giving less weight to the VA decision. Pl.'s Obj. 2 (emphasis in original omitted). However, the court does not find that Deloatche stands for such a proposition. In Deloatche, the ALJ "totally" disregarded the impact of the claimant's nonexertional limitations, failed to explain why he disregarded the opinion of two of the claimant's treating physicians that she was disabled, and failed to "consider" the fact of a disability determination by the state of North Carolina. 715 F.2d at 150. The Fourth Circuit reversed and remanded for these reasons, noting that "[n]either the opinion of a treating physician nor the determination of another governmental entity are binding on the Secretary," but "[n]evertheless . . . the disability determination of a state agency is entitled to consideration by the

Secretary." Id. n.1.

In the instant case, the ALJ did exactly what Deloatche counsels an ALJ must do. The ALJ presented his reasons for not giving either the opinion of plaintiff's treating physician or the VA determination controlling weight. Tr. 19-20. Notably, nowhere in Deloatche does the Fourth Circuit require an ALJ to present "persuasive, specific, valid" reasons for not accepting a determination of disability from another agency as controlling. Instead, the Fourth Circuit states that an ALJ must consider the disability determination, and offer on the record his reasons for not giving it controlling weight. Here, the ALJ did exactly what the Fourth Circuit requires. After a detailed inquiry into plaintiff's credibility and a reasoned rejection of Dr. Hoeper's opinion, the ALJ notes plaintiff's favorable VA decision. The ALJ then notes, as did the Fourth Circuit in Deloatche, that opinions as to disability are reserved for the Commissioner, and after considering the VA decision, gave his reasons for disagreeing with it, which were that plaintiff's evidence of PTSD in the record was inconsistent and unpersuasive. Tr. 19. Accordingly, the ALJ followed the correct legal standard, and plaintiff's objection is overruled.

4. Nonsevere Condition

Plaintiff's final objection states that the magistrate judge failed to adequately consider plaintiff' contention regarding "severe impairment error," or that plaintiff's PTSD could be a nonsevere condition. Plaintiff suggests that the ALJ should have considered plaintiff's PTSD at step four of the sequential evaluation. The magistrate judge rejected this contention, finding that the ALJ's opinion was supported by the evidence of record.

The court has thoroughly reviewed plaintiff's argument lodged in his motion for judgment on the pleadings as well as the findings of the ALJ. As noted herein, at step three, the ALJ

10

determines whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in the regulations. Here, at step three, the ALJ considered at length plaintiff's contentions regarding his PTSD. For reasons previously discussed, the ALJ did not find plaintiff's descriptions of his PTSD to be credible and did not give the opinion of Dr. Hoeper controlling weight. The court has examined at length these determinations, and finds them to be supported by the record. Furthermore, despite not finding that plaintiff's alleged PTSD met the criteria of an impairment listed in the regulations, the ALJ did find that plaintiff has symptoms of dysthymic disorder. Tr. 20. Thus, the ALJ carefully considered plaintiff's allegations of PTSD as well as the actual medications prescribed by doctors, and incorporated both into a thorough determination at step three. Tr. 20.

The court finds the ALJ's decisions at step three to be supported by the evidence of record. Plaintiff does not offer sufficient evidence to show that the ALJ's decisions at step three were not supported by the record, and therefore the argument that the ALJ should have considered the PTSD at step four is unavailing. In support of this objection, plaintiff cites Jones v. Astrue, 2009 WL 455414 (E.D.N.C. Feb. 23, 2009). However, in Jones, this court found that an ALJ's discussion at step three was sparse, but did not find reversible error where the ALJ included his substantive discussion at step three in the portion of the opinion addressing the claimant's RFC. 2009 WL 455414 at 3. In the present case, the ALJ properly considered plaintiff's impairments at step three, and supported his discussion with the evidence of record. Accordingly, plaintiff's objection is overruled.

## CONCLUSION

Upon *de novo* review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court ADOPTS the findings and recommendations of the magistrate judge in full, GRANTS defendant's motion for judgment on the pleadings (DE # 33), DENIES plaintiff's motion for judgment on the pleadings (DE # 31), and upholds the final decision of the Commissioner. The Clerk is directed to close this case.

SO ORDERED this the 4th day of August, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge